THIRD DIVISION
December 22, 2010

No. 1-08-3571

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County, Illinois. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 85 C 12403 |
| | ) | |
| REYNALDO MUNOZ, | ) | |
| | ) | Honorable Nicholas Ford, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE MURPHY delivered the opinion of the court.

On November 25, 1986, following a jury trial, defendant was found guilty of one count of first degree murder and one count of attempted murder. Defendant was sentenced to consecutive terms of 40 and 20 years' imprisonment, respectively. In 1988, on direct appeal, this court affirmed defendant's convictions and sentence. *People v. Munoz*, No. 1-87-0488 (1988) (unpublished order under Supreme Court Rule 23). On June 25, 2001, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2006)). Defendant's petition was dismissed as frivolous and patently without merit because it was untimely and because our supreme court had found that *Apprendi* did not implicate consecutive sentencing concerns. On appeal, defendant's counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987). On July 30, 2002, this court granted the *Finley* motion and affirmed the trial

No. 1-08-3571

court's dismissal of defendant's postconviction petition. *People v. Munoz*, No. 1-01-3802 (2002) (unpublished order under Supreme Court Rule 23).

The instant appeal concerns defendant's October 2008 *pro se* motion for leave to file a successive postconviction petition pursuant to section 122-1(f) of the Act. 725 ILCS 5/122-1(f) (West 2006). The trial court found that defendant failed to satisfy the cause-and-prejudice test and denied leave to file. The court opined that the allegations within defendant's successive postconviction petition were entirely frivolous and patently without merit.

On appeal, defendant argues the trial court erred in denying his motion because he: (1) alleged the gist of an actual innocence claim supported by newly discovered evidence provided by the affidavit of Hermino Molina, an eyewitness to the shooting; (2) established cause and prejudice for his claim under *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), asserting that the State failed to disclose Molina as an eyewitness; and (3) established cause and prejudice for his claim that the trial court refused to question jurors on their attitudes toward gangs. Defendant also requests that this court vacate the $105 penalty assessed by the trial court pursuant to section 22-105(b) of the Illinois Code of Civil Procedure (735 ILCS 5/22-105(b)(1), (b)(4) (West 2006)). We find that defendant presented evidence of actual innocence to support further proceedings under the Act and we reverse the dismissal of defendant's motion for leave to file a successive postconviction petition and vacate the imposition of filing fees and costs. This matter is remanded for further proceedings under the Act.

I. BACKGROUND

At defendant's trial, Bouvier "Bobby" Garcia testified to the events surrounding the shooting of September 8, 1985. Garcia testified that he and Ivan Mena arrived at a party at 1301

2

North Keeler Avenue, Chicago, Illinois, at about 10 p.m. on September 7, 1985. Garcia and Mena socialized at the party and Garcia had two cans of beer. At about midnight, Garcia saw defendant, whom he knew as "Scooby," arrive at the party with Ishmael Torres.

At around 3:30 a.m., Garcia observed an argument between defendant and "Junior," a member of the band that was playing at the party. The two were shouting at each other regarding a dispute over beer and they took their dispute outside. Garcia testified that he followed them outside and saw them engage in fisticuffs, with defendant ending up on top of Junior punching him. Garcia and Mena broke up the fight, with Mena grabbing defendant and Garcia grabbing Junior. They helped Junior get a ride home, talked with defendant and then left the party.

Garcia testified that he and Mena walked to Garcia's brother's house and then Mena's car for cigarettes. After retrieving the cigarettes, the two decided to return to the party and began walking back on West Potomac Avenue. Minutes before 4 a.m., Garcia saw defendant standing outside in front of 4218 West Potomac Avenue. He testified that he did not think anything of this until they were about 10 to 15 feet from defendant, when defendant fired three shots at them.

The first shot hit Mena, who fell to the ground. Garcia testified that he was hit in the left leg by the second shot and he fell to the ground. He then heard footseps retreating through a gangway and the clanging of a chain-link fence. Garcia crawled to Mena and tried to resuscitate him but was unsuccessful. He then crawled down the street to his house and banged on the window for his mother. Garcia was taken to St. Ann's Hospital and treated.

A couple of hours after his original treatment, Garcia was transferred to Swedish Covenant Hospital. Approximately a half hour after his transfer, police visited Garcia and questioned him about the shooting. Garcia testified that he told the police that he did not know who shot him and Mena. Garcia also told the police that he did not know what clothing the shooter was wearing or the type of firearm.

Garcia admitted that he lied to the police officers when first questioned. He testified that he truthfully identified defendant as the shooter on September 27, 1985, when the police came to his house and took him to the police station to view a lineup. At the station, Garcia told the police that the defendant was the shooter and identified defendant. Garcia testified that he was familiar with the Insane Unknowns street gang and did not originally identify defendant because he was afraid the gang would retaliate against his sister.

Lydia Mena testified that she heard shots fired at approximately 4:15 a.m. on September 8, 1985. She woke up and looked out her window and saw a body on the ground. She tried to call the police and then ran outside to find that the body on the ground was her son Ivan.

Migdalia Mena testified that at approximately 1 a.m. on September 8, 1985, she attended the party at 1311 North Keeler Avenue. She testified that she saw the fight between defendant and Junior and watched her brother Ivan and Garcia break up the fight. She testified after they calmed defendant down, she watched her brother and Garcia leave the party and walk toward her mother's house. She did not see the shooting.

Defendant presented the testimony of his parents, Illalus and Tellifo Munoz. Illalus, defendant's mother, testified that she was awake when defendant returned home at 3:30 a.m. on September 8, 1985. Illalus testified that she waited up for defendant to return home and checked

the time on the clock radio when he arrived. Illalus told defendant that he was out too late and defendant then went to bed in the room he shared with his father, Tellifo. Tellifo testified that defendant arrived home at about 3 a.m. and after speaking with his mother, came to the bedroom and went to bed. Tellifo testified that defendant did not leave the apartment after going to bed.

Defendant testified on his own behalf. Defendant claimed that he did not shoot Garcia and Mena. Defendant denied having a dispute with either Garcia or Mena. Defendant denied being intoxicated, but admitted to having 12 cans of beer while at the party between 8 p.m. and about 3:00 a.m. Defendant testified that he got into the altercation with Junior when he asked him for a beer. He stated that Junior was drunk and asked him if he wanted to go out to the alley, and the two started to hit each other before Garcia and Mena broke up the fight.

Defendant testified that he stayed at the party with his friend Ishmael Torres. Torres left the party at about 3:20 a.m. because he was tired. Defendant walked home at that time. When he arrived home at about 3:25 a.m., his parents were awake and he talked to his mother and then his father, who was watching television, before going to bed. Defendant denied being a member of a street gang.

In rebuttal, the State presented the testimony of Evangelina Rivera, Ivan Mena's aunt, who lived at 1301 North Keeler Avenue. Rivera testified that she was outside her home near the sidewalk at about 4 a.m. on September 8, 1985, when she heard three gunshots. She ran into her house and upstairs before looking out her window. Rivera testified that she saw a group of three boys exiting the alley. Rivera identified defendant and Torres, whom she knew from the area, as part of the group. Rivera testified that she did not see any handguns and the men all had their

5

hands in their pockets. Rivera admitted that she did not inform the police about what she had seen until the Friday before trial.

The State also called Officer Ernest Halvorsen in rebuttal. Halvorsen testified that he interrogated defendant and arrested him on September 26, 1985, for the shootings. Halvorsen also testified that during questioning, defendant told him that he was a member of the street gang the Insane Unknowns. The parties rested and the jury returned a verdict of guilty for both shootings.

Defendant's trial counsel was suspended from the practice of law before a motion for new trial was filed and new counsel prepared a motion, without the benefit of a transcript from the *voir dire* proceedings. The motion was denied. Defendant filed a direct appeal arguing that the State improperly introduced evidence of gang affiliation, defense counsel was ineffective for failing to move to bar that evidence, and that the trial court erred in imposing consecutive sentences. This court affirmed defendant's conviction and sentence. *People v. Munoz*, No. 1-87-0488 (1988) (unpublished order under Supreme Court Rule 23).

On June 25, 2001, defendant filed a *pro se* postconviction petition pursuant to the Act. Defendant again asserted that his right to a fair trial was violated by the trial court's decisions allowing evidence about gangs and the trial court did not have the benefit of new precedent in Illinois. Defendant also asserted a *Brady* violation against the State for withholding the grand jury testimony of Torres, as well as an actual innocence claim based on an allegation that Halvorsen coerced Torres to implicate defendant. Defendant also alleged an *Apprendi* violation in sentencing.

Defendant's petition was dismissed as untimely and frivolous and patently without merit. The trial court found that the underlying issues supporting his claims had been previously addressed and were barred by the doctrine of *res judicata*. The trial court also rejected the sentencing issue because our supreme court had found that *Apprendi* did not implicate consecutive sentencing concerns. On appeal of this dismissal, defendant's postconviction counsel filed a motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987). On July 30, 2002, this court granted the *Finley* motion and affirmed the trial court's dismissal of defendant's postconviction petition. *People v. Munoz*, No. 1-01-3802 (2002) (unpublished order under Supreme Court Rule 23).

On October 12, 2004, defendant filed a *pro se* complaint for mandamus relief. Defendant alleged that the clerk of the circuit court had refused to provide him a copy of the censored and uncensored police reports for his case, a copy of the grand jury minutes, and a copy of defendant's juvenile records. Defendant alleged that the police records and grand jury transcripts contained exculpatory material. Defendant's complaint was dismissed on November 12, 2004.

Defendant filed the instant motion to file a *pro se* successive postconviction petition in October 2008. Defendant asserted that he was prejudiced by the admission of gang evidence at trial without the opportunity to *voir dire* jurors on that issue. Defendant also claimed that he suffered ineffective assistance of counsel at trial for trial counsel's failure to raise a *Batson* claim and to file a posttrial motion claiming a Rule 605 violation. Defendant further claimed ineffective assistance of counsel related to appellate counsel's failure to raise the claim the trial court erred in considering mitigating factors in sentencing. Finally, defendant raised a claim of

actual innocence. Defendant attached an affidavit from Hermino Molina who averred that he witnessed the shooting. Defendant did not explain in his motion when he received Molina's affidavit, dated October 27, 2006, and notarized by a notary public from the Commonwealth of Massachusetts, or how he located Molina.

In his affidavit, Molina stated that on September 8, 1985, he and a friend were having drinks at a bar at 4355 West Division Street, and left at approximately 3:50 a.m. While walking north on North Keeler Avenue, Molina saw a man he knew as "Shorty" and another man come out of the alley on West Crystal Street. He then saw "Shorty" raise a gun and fire five shots at some other men and then run away down the alley. Molina stated that he knows defendant personally and that he was not present at the shooting.

Molina also stated that on October 14, 1985, he voluntarily went to the 14th District police station and gave his account of the shooting to Officer Louis Torres. Torres informed him that he was at the wrong station and brought Molina to Area 5. Molina repeated his account to Halvorsen. Molina stated that Halvorsen drove him to the area of the shooting, where Molina reenacted everything he saw for Halvorsen. Molina stated that he was never contacted by the State's Attorney and that, though willing, he was never called to testify.

On November 21, 2008, the trial court denied defendant's request for leave. The trial court noted that the gang evidence claims were barred by *res judicata*. The trial court further opined that defendant failed to demonstrate cause and prejudice. Further, the trial court indicated that defendant failed to attach the alleged Molina affidavit and, assuming *arguendo*, that the averments in the affidavit were true, the evidence would not be material and would be

8

contradicted by the testimony at trial. The trial court also assessed a fee of $105 for filing a petition that lacked an arguable basis in law or fact. This appeal followed.

## II. ANALYSIS

### A. Defendant's Actual Innocence Claim

Under the Act, a defendant may file a petition that clearly identifies alleged constitutional violations. Supporting affidavits, records or other evidence shall be attached to the petition, or the defendant must explain why the evidence is not attached. 725 ILCS 5/122-2 (West 2006). At the first stage of postconviction proceedings, the trial court undertakes a facial review of the petition to determine if it is frivolous or patently without merit. If the court determines that the petition is either frivolous or patently without merit, the court must dismiss the petition in a written order. 725 ILCS 5/122-2.1(a)(2) (West 2006). If the petition survives to proceed to stage two, section 122-4 of the Act (725 ILCS 5/122-4 (West 2006)) provides for counsel to be provided for an indigent defendant, who may file an amended petition. *People v. Boclair*, 202 Ill. 2d 89, 100 (2002). The instant matter was dismissed at the first stage when the trial court denied defendant's motion for leave to file.

Our supreme court has recognized a low threshold for a *pro se* petitioner at the first stage of postconviction proceedings. To withstand dismissal, a *pro se* defendant must merely allege enough facts, with supporting affidavits, records or other evidence, to support the "gist" of a constitutional claim. *People v. Hodges*, 234 Ill. 2d 1, 11 (2009). To be dismissed as frivolous or patently without merit pursuant to the Act, the petition must have no arguable basis either in law or in fact, which means it is based on an indisputably meritless legal theory or a fanciful factual

allegation. This means the legal theory is completely contradicted by the record or the factual allegations are fantastic or delusional. *Hodges*, 234 Ill. 2d at 16-17.

Appellate review of a trial court's dismissal of a postconviction petition without an evidentiary hearing is *de novo*. *People v. Coleman*, 183 Ill. 2d 366, 380-89 (1998). The trial court's judgment is considered, not the reasons cited, and that judgment may be affirmed on any basis supported by the record if the judgment is correct. *People v. Lee*, 344 Ill. App. 3d 851, 853 (2003). At this stage, factual disputes not rebutted by the record must be resolved in an evidentiary hearing. *People v. Whitfield*, 217 Ill. 2d 177, 200 (2005).

Successive postconviction petitions are disfavored under the Act and a defendant must satisfy the cause-and-prejudice test for a successive petition to survive. 725 ILCS 5/122-1(f) (West 2006). Cause may be shown by pleading some objective factor external to the defense that impeded counsel or defendant from timely raising the claim in an earlier proceeding. *People v. Pitsonbarger*, 205 Ill. 2d 444, 460 (2002). Prejudice is shown when the defendant presents a claim of a constitutional error that so infected his trial that his conviction violated due process. *People v. Williams*, 392 Ill. App. 3d 359, 366 (2009).

However, the cause and prejudice requirement for successive postconviction petitions is excused when actual innocence can be shown. *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009). Unlimited "piecemeal" petitions couched in terms of actual innocence are not available because the preclusion doctrines of *res judicata*, collateral estoppel, and the law of the case remain after *Ortiz* to preclude petitions that do not support a new "claim." *Ortiz*, 235 Ill. 2d at 332. Therefore, the petitioner must provide evidence that is material and noncumulative of such

conclusive character that it would provide total vindication or exoneration and probably change the result on retrial. *People v. Anderson*, 401 Ill. App. 3d 134, 140-41 (2010).

Defendant contends that in *Anderson*, this court confused procedural posture for standard of pleading in analyzing *Ortiz*. He argues that *Ortiz* considered the denial of a postconviction claim at the third stage, not at the pleading stage, and the court's silence cannot be considered to establish a standard of pleading. However, in *Anderson*, this court noted the *Ortiz* court specifically required an actual innocence claim contain newly discovered evidence that could exonerate the defendant. Despite the *Ortiz* court's silence as to announcing a specific pleading standard, this court noted that silence coupled with its positive treatment of *People v. Collier*, 387 Ill. App. 3d 630 (2008), which did involve a pleading standard and the denial of leave to file a petition, affirmed the standard announced there. *Anderson*, 401 Ill. App. 3d at 140-41. Despite defendant's contention, he provides argument that he provided an actual innocence claim based on newly discovered evidence that was material and noncumulative.

Defendant argues that Molina's affidavit represents new evidence that he could not have discovered sooner through due diligence as the State did not include Molina on its list of witnesses in its discovery disclosure. Defendant asserts that nothing in the record indicates that he could or should have known that Molina was an eyewitness to the shooting. As proof of his diligence, defendant points to the efforts he and his family undertook in subsequent investigations of the case, in particular, his 2004 *pro se* motion seeking *mandamus*. Defendant reiterates that this motion indicates his difficulty in locating and receiving police reports and grand jury transcripts that could have assisted him in identifying witnesses.

11

Defendant contends that Molina's affidavit provides material and noncumulative evidence. The defense did not provide any eyewitnesses to the shooting, but only presented testimony of defendant and his parents to try and prove his alibi. Defendant argues that Molina's account clearly adds a new first-person account of the shooting that directly contradicts the State's eyewitness. Defendant concludes that at retrial, with Molina's testimony, the likely result would be acquittal because the State's case was weak - there was no physical evidence tying defendant to the crime, Garcia gave inconsistent statements to the police and at trial, and Rivera admitted that she did not mention to anyone that she saw defendant the morning of the shooting until the eve of trial. Defendant maintains that Molina's contradictory account, combined with the testimony of defendant and his parents would be fatal to the State's argument.

Defendant argues that this case is similar to that presented in *People v. Williams*, 392 Ill. App. 3d 359 (2009). In *Williams*, the trial court denied the defendant leave to file his third postconviction petition because he did not meet the cause-and-prejudice test and his petition was frivolous and patently without merit. The defendant confessed to committing the underlying crimes and was found guilty following trial. Defendant filed two *pro se* postconviction petitions before receiving the assistance of *pro bono* counsel for the third petition. Affidavits of two eyewitnesses who asserted that they told the police and an assistant State's Attorney that the defendant was not the right man were utilized to support the defendant's argument that he was innocent and only confessed because he was coerced by the interrogating officers. A codefendant also provided an affidavit in which he stated that he implicated the defendant only because the defendant was the only person the codefendant knew with the name that the police were looking for. The defendant's trial counsel also completed an affidavit, attesting that he was

not aware of these witnesses or what they had told the police. *Williams*, 392 Ill. App. 3d at 362-65.

Defendant adds that, if this court remands the matter for further proceedings under the Act, his case should be reassigned to a different trial court because the court exhibited prejudgment and arbitrary treatment of his petition. Defendant notes that a case should be reassigned to a new judge where the failure to do so would substantially prejudice the defendant or where the record discloses that the court's prejudice or animosity or ill will toward the defendant. *People v. Reyes*, 369 Ill. App. 3d 1, 24-26 (2006). Defendant adds that in *People v. Sparks*, 393 Ill. App. 3d 878 (2009), this court opined that a trial court's failure to examine a supporting affidavit required reversal because it made it unclear whether the trial court fully considered the actual innocence claim. Defendant argues that if *Sparks* admonition not to overlook affidavits is to have any force, the trial court's express denial of the existence of the affidavit requires transfer to another court.

This court found that the affidavits were newly discovered because the affiants did not agree to provide them until the year and two years prior to the defendant's petition. Furthermore, the defendant had lacked representation and, being imprisoned, the ability to investigate his claims. *Williams*, 392 Ill. App. 3d at 369. The attestations were also found to be material, noncumulative, and of such conclusive character as to probably change the result on retrial because they were consistent with other testimony and supported the defendant's contention that he did not participate in the crime. Noting that the defendant did not have the assistance of counsel for his prior petitions, the gravity of the offenses and the affidavits

supporting his actual innocence claim, this court found that fundamental fairness required it to reverse the dismissal of the defendant's third postconviction petition. *Williams*, 392 Ill. App. 3d at 371.

The State counters that this court clearly established in *Anderson* that a petitioner must provide more than a mere claim of actual innocence, but demonstrate due diligence in discovering evidence that is material and noncumulative and of such conclusive character that it would probably change the result on retrial. *Anderson*, 401 Ill. App. 3d at 140-41. The State argues that defendant failed to meet these requirements. Specifically, the State asserts that defendant failed to: (1) set out a free-standing claim; (2) show the evidence was new; (3) demonstrate due diligence; (4) show the evidence was noncumulative; and (5) show the evidence would have changed the outcome of the trial.

The State first argues that defendant failed to assert a valid free-standing claim of actual innocence as required by *Ortiz*. Rather, the State contends that defendant advanced claims of actual innocence and a *Brady* violation based on the same allegedly newly discovered evidence. It notes that a defendant has not asserted a free-standing actual innocence claim when the same evidence being relied upon is utilized to supplement the assertion of a separate constitutional violation. *People v. Hobley*, 182 Ill. 2d 404, 444 (1998).

In *Hobley*, the defendant was found guilty of seven counts of felony murder, one count of arson and seven counts of aggravated arson. In a postconviction petition, the defendant argued that, despite discovery requests, the State failed to disclose a report on fingerprint tests on a gasoline can recovered from the fire scene. This report showed that a second gasoline can was

found and the fingerprints identified on the gasoline can introduced at trial were not those of the defendant. The *Hobley* court found that these facts supported the defendant's postconviction *Brady* claim. *Hobley*, 182 Ill. 2d at 433-42.

However, the court rejected the defendant's claim that his actual innocence claim should survive based on this evidence as well because it was not "free-standing." The court opined that, unlike *People v. Washington*, 171 Ill. 2d 475, 477-79 (1996), where a witness came forward years after trial to state that two other men committed the crime and had not come forward prior due to fear for her life, the evidence cited in *Hobley* did not support a free-standing actual innocence claim and was being used to supplement his constitutional claim. Therefore, the defendant was not entitled to an evidentiary hearing or new trial on his actual innocence claim. The State concludes that, under *Hobley*, defendant's claim for actual innocence cannot stand because it is not free-standing as Molina's testimony is being utilized to bolster his *Brady* claim.

The State also contends that there is no showing that this evidence is newly discovered or that defendant demonstrated due diligence in discovering Molina. The State points to defendant's arguments that he and his family had continuously investigated this case and searched for exonerating evidence, but failed to uncover Molina who attested that he personally knew defendant. The State points to defendant's failure to seek *mandamus* relief for 18 years and failing to file his postconviction petition until October 2008 when Molina was allegedly located in October 2006. Furthermore, the State notes that neither Molina nor defendant has made any showing that Molina was unavailable prior to 2006, if he actually resided in

15

Massachusetts or if his affidavit presented any facts that were not already known to defendant at the time of trial.

The State also argues that the information in Molina's affidavit is merely cumulative and would not conclusively change the result on retrial. It contends that Molina's statement that he witnessed the shooting and defendant was not the shooter merely supports defendant's contention that he was not present at the time of the shooting. The State contends that this testimony would only be cumulative to the testimony offered at trial by defendant and his parents and supports a theory that was extensively developed at trial. The State concludes that this testimony would not change the result at trial because Garcia's eyewitness testimony that defendant shot him and Mena would remain sufficient to justify conviction and not be overcome by Molina's testimony.

First, with respect to defendant's claim that a new judge should be appointed on remand, we note that defendant failed to establish anything more than the trial court did not review the Molina affidavit. This does not establish bias or prejudice, animosity or ill will toward defendant as required for the reassignment of the case to a new judge. At best, unlike *Sparks* where it was clear the court overlooked affidavits, this indicates a clerical error and the trial court should, at the very least, consider defendant's motion and petition with Molina's affidavit attached.

However, based on the evidence presented by defendant, we believe the dismissal should be reversed and the matter remanded for further proceedings under the Act. Defendant's petition and Molina's affidavit fail to provide detail regarding when, and if, Molina relocated to

16

Massachusetts and why he was difficult for defendant and his family to find. However, his affidavit is notarized by a Massachusetts notary and he attested to his actions in reporting what he witnessed to the police. Defendant provided a copy of the State's discovery disclosures for trial and there is no mention of Molina or any other eyewitness to the shooting. Defendant also provided detail about how he sought to discover information, in particular, attempting to seek *mandamus* to ascertain the grand jury transcripts and police investigation reports for his case. Based on this information, and reviewing it in a light favorable to defendant, his *pro se* petition showed that this was newly discovered evidence.

Contrary to the State's assertion, an eyewitness account of the shooting naming another man as the shooter does more than provide cumulative evidence to support defendant's alibi that he was at home during the shooting. While Garcia testified at trial that defendant was the shooter, defendant raises weaknesses in his testimony that a second eyewitness could overcome if the trier of fact found Molina more credible. As noted by defendant, Garcia was shot in the leg that evening on a dark street and he did not originally identify defendant. Given a second eyewitness, the trier of fact could certainly conclude that defendant was not guilty. Therefore, defendant's claim had an arguable basis in law and fact and should not have been dismissed as frivolous and without merit. Where the gist of a meritorious claim has been made, all allegations of the postconviction petition advance as there is no provision in the Act for partial dismissals. *People v. Hanks*, 335 Ill. App. 3d 894, 903-04 (2002). Therefore, we need not consider defendant's claims of ineffective assistance of counsel or improper *voir dire* as the entire petition advances.

B. Imposition of $105 Penalty for Filing Frivolous Postconviction Petition

Finally, defendant contends that the trial court erred in imposing a fine of $105 pursuant to section 22-105 of the Code of Civil Procedure. 735 ILCS 5/22-105(b)(1), (b)(4) (West 2006). Based on our findings above, we agree with defendant that this fee must be vacated. Under this section, fees may be assessed for a frivolous pleading, defined as lacking "an arguable basis in either fact or law" or containing allegations that lack any evidentiary support. 735 ILCS 5/22-105(b)(1), (b)(4) (West 2006). The purpose of this section is to discourage frivolous petitions and reduce the load of such petitions on our system. *People v. Marshall*, 381 Ill. App. 3d 724, 737 (2008). We have found that defendant's petition cannot be considered frivolous at this stage and vacate the imposition of fees.

### III. CONCLUSION

For the foregoing reasons, we reverse the denial of defendant's request to file his successive postconviction petition and vacate the assessment of a fee under section 22-105 of the Code of Civil Procedure and remand for further proceedings under the Act.

Reversed in part and vacated in part; cause remanded for further proceedings.

NEVILLE and STEELE, JJ., concur.

No. 1-08-3571

REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT

(Front Sheet to be Attached to Each Case)

| | |
|---|---|
| Please Use Following Form: | |
| Complete TITLE of Case | THE PEOPLE OF THE STATE OF ILLINOIS,<br><br>Respondent-Appellee,<br><br>v.<br><br>REYNALDO MUNOZ,<br><br>Petitioner-Appellant. |
| Docket No.<br><br>COURT<br><br>Opinion Filed | Nos. 1-08-3571<br><br>Appellate Court of Illinois<br><br>First District, THIRD Division<br><br>December 22, 2010<br><br>(modified upon rehearing)<br><br>(Give month, day and year) |
| JUSTICES | JUSTICE MURPHY delivered the opinion of the court:<br><br>Neville and Steele, JJ.,      concur [s] |
| APPEAL from the Circuit Ct. of Cook County, Criminal Div. | Lower Court and Trial Judge(s) in form indicated in the margin:<br><br>The Honorable    Nicholas Ford   , Judge Presiding. |
| For APPELLANTS, John Doe, of Chicago. | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel. Indicate the word NONE if not represented.<br><br>Attorneys for **Petitioner-Appellant:** Michael J. Pelletier, State Appellate Defender<br><br>Patricia Unsinn, Deputy Defender<br><br>Jonathan Yeasting, Asst. Appellate Defender<br><br>203 N. LaSalle Street, 24th Floor<br><br>Chicago, IL  60601<br><br>Phone: (312) 814-5472<br><br>Attorneys for **Respondent-Appellee**:    Anita Alvarez, State's Attorney of Cook County |
| For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of Counsel) | Of counsel: Allen J. Spellberg, Brian K. Hodes, Tasha-Marie Kelly, Asst. State's Attorneys<br><br>309 Richard J. Daley Center |

Chicago, IL  60602
Phone: (312) 603-3362