2021 IL App (1st) 182440-U

No. 1-18-2440

Order filed February 11, 2021

SIXTH DIVISION

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. 12 CR 12804 |
| JOSE AGUIRRE, | ) ) | Honorable Carol M. Howard, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Mikva and Justice Oden Johnson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the summary dismissal of defendant's postconviction petition, where the specific claim of appellate counsel's ineffectiveness asserted on appeal was not contained in the petition and is therefore forfeited.

¶ 2    Defendant Jose Aguirre appeals from the summary dismissal of his *pro se* postconviction petition for relief filed under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2014)). He contends that the circuit court erred in dismissing his petition because he raised

an arguable claim that his appellate counsel was ineffective for failing to argue on direct appeal his trial counsel's ineffectiveness. For the following reasons, we affirm.

¶ 3    Following a 2015 bench trial, defendant was found guilty of possession of a controlled substance with intent to deliver and sentenced to 20 years in prison. We affirmed on direct appeal. *People v. Aguirre*, 2017 IL App (1st) 160458-U. Because we set forth the facts on direct appeal, we recount them here to the extent necessary to our disposition.

¶ 4    During his bench trial, defendant was represented by private attorneys Thomas Bennett and David Goldman. In its opening statement, the State argued that police were observing a residence based on information "from an individual" about a drug transaction that was supposed to transpire, and that police saw defendant arrive at the building with an object that turned out to contain cocaine. During defense counsel's opening statement, counsel asserted that a search warrant had been executed at the location where defendant was arrested. Counsel stated:

> "When the search warrant was executed, drugs were found and an individual who had not been named in the search warrant was present in the apartment where these drugs were found. He told the police that he knew someone who could bring him drugs and the police, the evidence will show, told him to make a call. And the evidence will show that – I believe, that he called [defendant]".

¶ 5    Chicago police officer Armando Silva testified that on the evening of June 20, 2012, he and other officers were surveilling a two-flat residence in the 3100 block of West 54th Place. The officers were surveilling the residence based on information from a "concerned citizen" that a drug transaction would occur at that location. Specifically, police had been informed that a Hispanic man, approximately 30 years old, with a goatee, tattoos, and a green four-door vehicle would be

bringing narcotics to the building. Silva eventually saw defendant approach in a green car. The "concerned citizen," who was with Silva, identified defendant as the person who was going to bring the narcotics.

¶ 6     Silva observed defendant approach the residence. Defendant was holding an object that he attempted to place under his shirt. Silva radioed enforcement officers, who approached defendant. Defendant had entered the vestibule, so Silva did not see what happened next. Silva later learned that defendant was in custody and that an item of suspected cocaine was recovered. Silva viewed the item, which was inventoried. The parties stipulated as to the chain of custody for the item.

¶ 7     On cross-examination, Silva acknowledged that earlier on the date of defendant's arrest, he and other officers executed a search warrant at the residence. Silva acknowledged that defendant's name was given to police by a person who was in the building during the search. This person was the same individual who then called defendant. Silva agreed that this individual could have been considered a "confidential informant." During cross-examination, defense counsel questioned Silva as follows:

> "Q. And, Officer, [defendant's] first name came up when the person – the individual who was in the apartment that you searched and where drugs were found gave you his name; is that correct?
>
> A. Correct.
>
> Q. So you had no information about Mr. Aguirre prior to that?
>
> A. Correct.
>
> Q. And when this individual told you that Mr. Aguirre – he could have Mr. Aguirre come with some drugs, you had to make a phone call, correct?

A. What do you mean?

Q. Well, did you have that individual who was in the apartment where the drugs were found where you executed the search warrant call Mr. Aguirre?

A. Yes, he did.

Q. Okay. And he did that on your behalf, at your urging; is that correct?

A. Yes, he willingly made a phone call."

¶ 8 Officer Mark Grobla testified that he was one of the enforcement officers working with Silva on the evening of defendant's arrest. When Grobla and another officer approached the building, he saw defendant walking toward the front stairs of the building. Grobla pursued defendant, who walked up the stairs and entered the vestibule of the building. As Grobla ran up the stairs, he observed defendant place an object beneath a floor mat in the vestibule. Officers detained defendant, and Grobla recovered the object from under the mat, which was wrapped in plastic. Grobla gave that item to another officer to be inventoried.

¶ 9 The parties stipulated that if called as a witness, the forensic scientist who analyzed the item would testify that it tested positive for 112.1 grams of cocaine.

¶ 10 Defense witness Belen Garcia testified that on the evening in question, she and a girlfriend, Mara Maqueros, were walking on the sidewalk on their way to the same building to buy marijuana. The women were walking with Maqueros' five children. Garcia observed defendant approaching the front steps of the building when she noticed police officers. Garcia testified that police apprehended defendant as he was on the stairway, and that defendant did not enter the building. The defense rested after Garcia's testimony.

¶ 11    In rebuttal, the State introduced a stipulation that, if called, Tom Finn, an investigator with the State's Attorney's Office, would testify that Garcia previously told him that she saw police officers enter the building before they emerged with defendant.

¶ 12    The State then recalled Grobla in rebuttal, who denied that he saw anyone on the sidewalk with children as he approached the building. Officer David Salgado gave similar testimony.

¶ 13    The trial court found defendant guilty of possession of a controlled substance with intent to deliver, stating that it found the testifying police officers were more credible than Garcia.

¶ 14    Defendant's trial counsel (Bennett and Goldman) were granted leave to withdraw. Attorneys Michelle Gonzalez and John Paul Carrol filed appearances on behalf of defendant. On August 7, 2015, those attorneys filed a motion for a new trial, based on claims of ineffective assistance of trial counsel. In the motion, defendant alleged, *inter alia,* that he received ineffective assistance when, during opening statements, his trial counsel "admitted that an unknown individual called [defendant] to bring drugs."

¶ 15    The trial court conducted a hearing, at which it heard testimony from defendant as well as from Goldman. The court denied defendant's motion for new trial and sentenced him to 20 years in prison.

¶ 16    On direct appeal, defendant argued that the trial court improperly denied his motion for new trial, because, *inter alia,* his trial attorneys were ineffective for admitting to wrongdoing in opening statements. This court affirmed. *Aguirre*, 2017 IL App (1st) 160458-U.

¶ 17    On June 5, 2018, defendant filed a *pro se* petition for postconviction relief under the Act. In the petition, defendant alleged that he was denied effective assistance of trial counsel because (1) counsel failed to retain or request an interpreter; (2) counsel's reference during opening

argument "to the C/I [confidential informant] calling [defendant] to bring him the drugs" was effectively an admission of his guilt; (3) counsel was ineffective when they stipulated to the chain of custody of the recovered cocaine; and (4) counsel failed to request "crucial discovery documents" relating to the confidential informant and search warrant. Defendant further argued that his appellate counsel (attorneys Gonzalez and Carrol, the same attorneys who represented him in his motion for new trial) were ineffective for "failing to raise the claims presented herein" on direct appeal, such that "waiver or forfeiture cannot apply."

¶ 18    On August 23, 2018, the circuit court summarily dismissed the petition as frivolous and patently without merit. The circuit court found that each claim of ineffective assistance of trial counsel was without arguable merit. The court further concluded that, because each of the underlying claims of trial counsel's ineffectiveness was without support, defendant's claim of ineffective assistance of appellate counsel was also without merit.

¶ 19    On November 28, 2018, this court allowed defendant's motion for leave to file a late notice of appeal.

¶ 20    On appeal, defendant contends that the summary dismissal of his petition was erroneous because he raised an arguable claim that counsel on direct appeal was ineffective for failing to argue trial counsel's ineffectiveness, with particular respect to the evidence of the confidential informant's out-of-court statements. In setting forth this argument, defendant acknowledges that he previously argued, in his direct appeal, that trial counsel was ineffective "for admitting, in opening statements that the confidential informant called [defendant] to set up a drug transaction." He maintains that he is *not* attempting to repeat that same claim of ineffectiveness in this appeal. In his reply brief, he states: "[Defendant] is *not* arguing on appeal here that his direct appeal

counsel was ineffective for failing to argue that his trial counsel was ineffective for admitting, in opening statements, that the confidential informant called [defendant] to set up a drug transaction, *as that issue was raised on direct appeal.*" (Emphasis added.) That is, in this appeal he is not premising his claim of ineffectiveness on his counsel's reference to the confidential informant during opening statements.

¶ 21     Instead, defendant maintains that his petition should not have been dismissed because it "made a further claim * * * that he was denied his right to the effective assistance of trial counsel where counsel's admission during opening statements was based on out-of-court statements made by the confidential informant, who did not testify at [defendant's] trial, but whose statements were subsequently admitted" through Silva's testimony. Defendant argues that his trial counsel's "failure to object to Silva's testimony and to elicit even further hearsay testimony on cross-examination was objectively unreasonable." Specifically, he suggests that his trial counsel was ineffective by (1) failing to object to Silva's hearsay testimony that a "concerned citizen" identified defendant as the person who would bring drugs to the location, and (2) eliciting similar testimony from Silva on cross-examination "that [defendant's] name first came up when the confidential informant gave the police [defendant's] name."

¶ 22     Defendant proceeds to argue that appellate counsel's failure to raise this claim on direct appeal is also arguably ineffective. That is, defendant now asserts: "appellate counsel's failure to raise trial counsel's ineffectiveness for not objecting to the out-of-court statements made by the confidential informant and his eliciting of further out-of-court statements was arguably unreasonable and arguably prejudicial." On this basis, he asks that we reverse the dismissal of his petition and remand for second-stage postconviction proceedings.

¶ 23    Defendant filed his petition under the Act, which "provides a method by which persons under criminal sentence in this state can assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). A postconviction proceeding not involving the death penalty contains three distinct stages. *Id.* at 10. "At the first stage, the circuit court must * * * independently review the petition, taking the allegations as true, and determine whether 'the petition is frivolous or is patently without merit.' " *Id.* (quoting *People v. Edwards*, 197 Ill. 2d 239, 244 (2001)). If the circuit court determines that a petition is "frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision." 725 ILCS 5/122-2.1(a)(2) (West 2018). A petition may be dismissed as frivolous or patently without merit pursuant to section 122-2.1(a)(2) only if the petition has no arguable basis either in law or in fact, *i.e.*, it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Hodges*, 234 Ill. 2d at 16. A defendant at the first stage "need only present a limited amount of detail in the petition." *Id.* at 9. Only a "gist" of a constitutional claim is needed at the first stage, and "[t]he allegations in the petition must be taken as true and liberally construed. [Citation.]" *People v. Reed*, 2014 IL App (1st) 122610, ¶ 39.

¶ 24    We review *de novo* the summary dismissal of a postconviction petition. *Id.* ¶ 37. We review the trial court's judgment and not the reasons cited for the judgment, and we may affirm the trial court on any basis supported by the record. *People v. Munoz*, 406 Ill. App. 3d 844, 850 (2010).

¶ 25    In arguing that we should affirm the summary dismissal of defendant's petition, the State initially urges that defendant's claims that appellate counsel was ineffective for not raising trial counsel's ineffectiveness are forfeited. For the following reasons we agree with the State that the

specific allegations of trial counsel's ineffectiveness asserted in this appeal were not set forth in defendant's petition and are therefore forfeited. In his petition, defendant never suggested that trial counsel should have objected to hearsay evidence regarding the confidential informant, that trial counsel was ineffective in eliciting such evidence in Silva's cross-examination, or that appellate counsel should have argued such ineffectiveness by trial counsel on direct appeal.

¶ 26     The Act specifies that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." 725 ILCS 5/122-3 (West 2016). "This court lacks the authority to excuse an appellate forfeiture caused by the failure of a litigant to include issues in his or her postconviction petition." *Reed*, 2014 IL App (1st) 122610, ¶ 43 (citing *People v. Jones*, 213 Ill. 2d 498, 507-08 (2004)); see also *People v. Ligon*, 392 Ill. App. 3d 988, 996 (2009) (by failing to raise ineffective assistance of counsel arguments in his *pro se* postconviction petition, "the defendant has waived them, and this court does not have authority to excuse that waiver."). "Our supreme court * * * has indicated that this court is not free to consider claims raised for the first time on appeal from the dismissal of a postconviction petition." *Reed,* 2014 IL App (1st) 122610, ¶ 55 (citing *People v. Pendleton*, 223 Ill. 2d 458, 475 (2006)). In fact, "[o]ur supreme court has criticized this court more than once for inappropriately overlooking the waiver provision of the Act" and addressing claims for the first time on appeal. *Reed*, 2014 IL App (1st) 122610, ¶ 43 (citing *Pendleton*, 223 Ill. 2d at 475 (quoting *Jones*, 213 Ill. 2d at 506)); see also *People v. Cathey*, 2012 IL 111746, ¶ 21 (finding that "[t]he appellate court below erroneously reached an issue that was not raised in defendant's postconviction petition").

¶ 27    In *Reed,* we recognized that "attempts by counsel to raise claims for the first time on appeal from the first-stage dismissal of a postconviction petition are understandable, but simply not permitted under the Act." *Reed*, 2014 IL App (1st) 122610, ¶ 43. We explained:

> " '[T]he typical *pro se* litigant will draft an inartful pleading which does not survive scrutiny under the 'frivolty/patently without merit' standard of section 122-2.1, and it is only during the appellate process, when the discerning eyes of an attorney are reviewing the record, that the more complex errors that a nonattorney cannot glean are discovered. The appellate attorney, not wishing to be remiss in his or her duty, then adds the newly discovered error to the appeal despite the fact that the claim was never considered by the trial court in the course of its ruling. * * * [T]he attorney is zealously guarding the client's rights and is attempting to conserve judicial resources by raising the claim expeditiously at the first available chance. These goals are laudable, but they nonetheless conflict with the nature of appellate review and the strictures of the Act.'" *Reed*, 2014 IL App (1st) 122610, ¶ 43 (quoting *Jones*, 213 Ill. 2d at 504-05.).

¶ 28    *Reed* illustrates that a distinct claim cannot be raised for the first time on appeal, even if it is factually related to a claim in the petition. In that case, the defendant alleged in his postconviction petition that counsel on direct appeal was ineffective for failing to challenge, on hearsay grounds, the admissibility of defendant's alleged statement to police. 2014 IL App (1st) 122610, ¶¶ 28, 59.  On appeal from the summary dismissal of the petition, the defendant argued that appellate counsel was ineffective in failing to argue that prosecutors and police failed to honor his requests to remain silent and for an attorney and interrogated him in violation of his fifth

amendment rights. *Id.* ¶ 41. We concluded that the claim raised on appeal was forfeited. In doing so, we explained that, although the claims in the petition and raised on appeal both "nominally address[ed]" the same statement made by the defendant, the petition's claim was that the statement "may not have been his statement at all (or not inculpatory), whereas the claim asserted on appeal was that the statement was illegally obtained. *Id.* ¶ 59. Although these arguments were "not necessarily inconsistent," they were "distinct from each other." *Id.* Thus, while "both the petition and the appeal allege[d] ineffective assistance of appellate counsel related to Reed's statement," "the respects in which Reed allegedly received ineffective assistance of appellate counsel [were] distinctly different." *Id.* ¶ 60.

¶ 29    The instant case presents an analogous situation to that in *Reed.* Here, both defendant's petition and his argument on appeal allege trial counsel's ineffectiveness, in relation to references to the confidential informant at trial. However, a close examination reveals that the claims are distinct, as they concern counsel's conduct at different stages of trial.

¶ 30    The petition, in relevant part, claimed that trial counsel was ineffective when, in *opening argument,* counsel referenced the confidential informant's call to defendant. According to the petition, in so doing, trial counsel effectively conceded an "admission to the offense." The relevant portion of the petition is set forth under the heading: "Claim Three: That the Petitioner Was Denied His Constitutional Rights Under the 5th, 6th and 14th Amendments; Where Defense Counsel Admitted to the Petitioner['s] Guilt of the Crime for Which He Entered a Not Guilty Plea." In that portion of the petition, defendant contends that "defense counsel was reckless during his opening argument where counsel['s] reference to the [confidential informant] calling petitioner to bring

him the drugs w[as] in essence, an admission to the offense." After citing a number of cases, this portion of the petition concluded:

> "It[']s borderline incompetent for an attorney to concede petitioner's guilt without the client having a voice about 'it.' * * * [D]efense counsel['s] actions [were] tantamount to a guilty plea. For these reasons, the petitioner should be given a new trial.
>
> Also, as an afterthought, it should be pointed out that the individual or C/I which defense counsel referred to at his opening statements was never called to testify; thus, had this been the Stat[e] prosecutor that made this statement it alone would have been a subject for grounds for reversal."

¶ 31 Whereas the petition focused upon counsel's reference to the informant in his opening statement, the nature of the ineffectiveness claim asserted in this appeal is clearly different: defendant now claims counsel was ineffective at the subsequent, evidentiary phase of trial. Specifically, defendant now claims that trial counsel was ineffective by (1) failing to object, on hearsay grounds, to testimony regarding statements by the informant and (2) eliciting testimony regarding such statements during the cross-examination of Silva. As the State correctly notes, at no point does the petition reference trial counsel's failure to object to Silva's testimony on hearsay grounds, or make mention of counsel's cross-examination of Silva. Further, the petition contains no suggestion that evidence of the informant's statements violated the hearsay rule or defendant's constitutional right of confrontation. Thus, although defendant's petition and his appeal both assert ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness in

relation to the confidential informant, the claims are "distinctly different." *Reed*, 2014 IL App 122610, ¶ 60.

¶ 32    In his reply brief, defendant maintains that his petition did, in fact, raise the issue that he asserts on appeal. He refers us to the following sentence: "Also, as an afterthought, it should be pointed out that the individual or C/I which defense counsel referred to at his opening statements was never called to testify; thus, had this been the Stat[e] prosecutor that made this statement it alone would have been subject for ground for reversal." Defendant urges that this sentence "did specifically challenge the out-of-court statements of the confidential informant that were introduced despite the confidential informant not being called to testify." We disagree.

¶ 33    We recognize that defendant's allegations in a *pro se* petition are to be liberally construed. *Reed*, 2014 IL App (1st) 122610, ¶ 39, and a petition "need only present the 'gist' of a constitutional claim * * * requiring only a limited amount of detail." *Jones*, 211 Ill. 2d at 144. Nevertheless, the petition must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122-2 (West 2018), and "a defendant may not raise an issue for the first time while the matter is on review." *Jones*, 211 Ill. 2d at 148. Even under a liberal construction, the petition simply does not contain the specific claims asserted on appeal, *i.e.*, that trial counsel was ineffective in not objecting to or eliciting evidence of the confidential informant's statements. We lack the authority to excuse such forfeiture, as attempts to raise claims for the first time on appeal are "simply not permitted under the Act." *Reed*, 2014 IL App (1st) 122610, ¶ 43. Accordingly, we agree with the State that we cannot consider defendant's ineffectiveness claim asserted on appeal because it was not included in his petition.

¶ 34 In finding that the specific claim raised in this appeal was forfeited, we recognize that defendant's petition explicitly sought to avoid forfeiture by asserting that his counsel on direct appeal was ineffective for failing to raise his claims of ineffective assistance of trial counsel. Specifically, the petition asserted in "Claim One" that "waiver or forfeiture cannot apply" because his counsel on direct appeal "was ineffective * * * for failing to raise the claims presented herein," before the remaining portions of the petition set forth allegations of trial counsel's ineffectiveness. We recognize the general principle that although "issues that could have been presented on direct appeal but were not are considered waived" in postconviction proceedings, "reviewing courts may relax the waiver rule where the defendant's failure to raise an issue on direct appeal is attributable to ineffective assistance of appellate counsel." *People v. Jones,* 262 Ill. App. 3d 31, 35 (2005) (citing *People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)). However, that waiver exception is distinct from the forfeiture principle upon which we reach our decision, *i.e.*, that a claim must be actually included in the petition before it can be reviewed on appeal. *Reed*, 2014 IL App (1st) 122610, ¶ 43 (we lack "authority to excuse an appellate forfeiture caused by the failure of a litigant to include issues in his or her postconviction petition."). The general assertion of appellate counsel's ineffectiveness in "Claim One" does not alter the fact that the petition simply did not allege the specific form of trial counsel ineffectiveness argued on appeal. Indeed, that portion of the petition asserted that appellate counsel was ineffective for "failing to raise the claims [of ineffective assistance of trial counsel] *presented herein*." (Emphasis added). As discussed, nowhere in the petition did defendant allege that trial counsel was ineffective for failing to object to, or eliciting, hearsay evidence of the confidential informant's statements. Thus, the petition's reference to appellate counsel's ineffectiveness is insufficient to avoid the consequences of forfeiture.

¶ 35    That said, we note that our finding of forfeiture does not necessarily preclude defendant from ever pursuing the specific claims that he attempted to raise for the first time in this appeal. As discussed by our supreme court, he may seek leave to raise such claims in a successive postconviction petition. See *Jones*, 211 Ill. 2d at 148-49 ("A defendant who fails to include an issue in his original or amended postconviction petition, although precluded from raising the issue on appeal from the petition's dismissal, may raise the issue in a successive petition if he can meet the strictures of the 'cause and prejudice test.' [Citations.]"); *Pendleton*, 223 Ill. 2d at 476 (explaining "[d]efendant is, of course, free to pursue any defaulted claims he believes to be of merit by filing a successive postconviction in the circuit court in accordance with the 'cause and prejudice' guidelines * * *.").

¶ 36    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37    Affirmed.