THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL WILLIAMS, Defendant-Appellant.

First District (4th Division)   No. 1—08—1286

Opinion filed June 4, 2009.

Ungaretti & Harris, of Chicago (Michael L. Sklar, John T. Ruskusky, Abosede Odunsi, Timothy Horton, and Patrick Ross, of counsel), for appellant.

Anita Alvarez, State's Attorney, of Chicago (James E. Fitzgerald and Mary P. Needham, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GALLAGHER delivered the opinion of the court:

Defendant Carl Williams appeals the circuit court's dismissal of his third petition for relief under the Post-Conviction Hearing Act (the Act) (725 ILCS 5/122—1 et seq. (West 2006)). On appeal, defendant contends that his present petition and supporting affidavits meet the Act's "cause" and "prejudice" requirements for successive petitions. He further asserts that his petition established his actual innocence and stated the gist of a constitutional claim that the prosecution withheld material evidence from his trial counsel. For the reasons set forth below, the circuit court's order denying defendant leave to file his third postconviction petition is reversed, and this case is remanded for

further consideration of the petition pursuant to sections 122—4 through 122—6 of the Act.

## BACKGROUND

### I. The Offense and Defendant's Direct Appeal

Defendant was convicted of two counts of first degree murder, along with aggravated criminal sexual assault, armed robbery and vehicular hijacking, in connection with the 1994 deaths of Reginald Wilson and Felicia Lewis. Along with defendant, four other men were charged with committing those crimes together.

A summary of the underlying facts is necessary to discuss defendant's current petition.[1] In the early morning hours of January 13, 1994, two men approached Wilson, Lewis and Steven Fitch when Wilson's Chevrolet Blazer was stopped at a gas station. After Fitch went inside the station, the men drove away in the Blazer with Wilson and Lewis inside. Several hours later, police pulled over the Blazer with Scott Chambers and Stanley Hamelin inside. The bodies of Wilson and Lewis were discovered later that day in a large garbage bin; both had sustained multiple gunshot wounds. Under police questioning, Chambers and Hamelin stated that three other men were involved in the offense: "Bay" (later identified as Zarice Johnson), Anthony Brown and "Carl."

Later that day, Johnson and Brown were stopped in Brown's Chevrolet Caprice. Another passenger in Brown's car, who identified himself as Larry McGee but was later determined to be Clinton Taylor, was questioned about the offenses and said he knew "Carl" and would show police where to find him. Taylor led police to the home of defendant's girlfriend, Erica Wells, where defendant was located.

After being questioned, defendant made a formal written statement admitting to his participation in the crimes. In the statement, defendant said that he, Chambers, Hamelin, Brown and Johnson were riding around in Brown's Caprice and that Chambers had a weapon that he showed to the group. The five men agreed to hijack a car to sell its parts and split the proceeds. Defendant said he acted as a lookout when Chambers and Hamelin approached the Blazer at the gas station. After Chambers and Hamelin drove away in the Blazer, defendant, Johnson and Brown followed in the Caprice. When the two

---

[1]The facts also are set out in the opinion deciding defendant's direct appeal (*People v. Williams*, 305 Ill. App. 3d 517, 712 N.E.2d 883 (1999)), and the order disposing of his appeal from the dismissal of his second postconviction petition (*People v. Williams*, No. 1—04—2153 (2006) (unpublished order under Supreme Court Rule 23)).

vehicles later met up, defendant brought Lewis to the Caprice, where Brown sexually assaulted her while defendant watched.

The five men later met at the apartment of Hamelin's sister, where Chambers told them that he had shot Lewis and Wilson. Defendant was convicted following a jury trial and was sentenced to natural life in prison. Chambers and Hamelin were convicted separately, and Johnson entered into a plea agreement with the State.

In defendant's direct appeal, he claimed that police lacked probable cause to arrest him and that his trial counsel was ineffective in failing to object to the presentation of hearsay evidence. This court rejected those arguments and affirmed defendant's convictions in 1999. See *Williams*, 305 Ill. App. 3d at 530, 712 N.E.2d at 893. The Illinois Supreme Court denied defendant's leave to appeal. *People v. Williams*, 185 Ill. 2d 662, 720 N.E.2d 1104 (1999).

## II. Postconviction Proceedings

### A. Defendant's First and Second Petitions

In January 2001, defendant, acting *pro se*, filed a petition for postconviction relief, largely reasserting the points raised in his direct appeal. The circuit court summarily dismissed defendant's petition. This court affirmed, finding no issues of merit and granting the Cook County public defender leave to withdraw as appellate counsel pursuant to *Pennsylvania v. Finley*, 481 U.S. 551, 95 L. Ed. 2d 539, 107 S. Ct. 1990 (1987), in light of counsel's assertion that defendant's petition stated "no arguable bases for collateral relief." *People v. Williams*, No. 1—01—1445 (2002) (unpublished order under Supreme Court Rule 23).[2]

In 2004, defendant filed a second *pro se* postconviction petition, claiming that his initial petition was deficient and stating that he could provide newly discovered evidence of his actual innocence. Defendant attached affidavits of Chambers and Hamelin that he asserted were not available when he filed his first petition and in which Chambers and Hamelin attested they did not know defendant and did not identify defendant to police as one of the participants in the crimes. Both men stated that police showed them defendant's photo and pressured them to falsely implicate defendant. Defendant further asserted that his counsel on direct appeal was ineffective in failing to raise certain errors made by his trial counsel and that the attorney who represented him in his appeal from his first postconviction petition also was ineffective. The circuit court dismissed the petition, stating

---

[2]In 2003, defendant filed a *habeas corpus* petition in federal court, which was dismissed.

in a three-page written order that defendant had not met the cause and prejudice requirements to bring a successive postconviction petition and that defendant already had raised the issue of the ineffectiveness of his appellate counsel.

On appeal from that dismissal, this court affirmed that the affidavits of Chambers and Hamelin did not meet the cause and prejudice requirements or establish defendant's actual innocence such that defendant could bring a second postconviction petition. *Williams*, slip op. at 10. The court concluded that defendant had been aware of the identities of Chambers and Hamelin earlier but had offered no proof that he previously had attempted to obtain their statements or that they refused to cooperate or were unable to provide the information. *Williams*, slip op. at 8. This court further stated that the affidavits did not demonstrate defendant's actual innocence because they did not show "conclusively that defendant was uninvolved in the offenses." *Williams*, slip op. at 9. The court stated that given defendant's inculpatory statement and the identification of defendant by Taylor ("McGee"), it was unlikely that the affidavits of Chambers and Hamelin would have persuaded a jury of defendant's innocence. *Williams*, slip op. at 9-10.

## B. Defendant's Third Petition

In January 2008, defendant filed a third petition for postconviction relief, which was prepared by counsel acting *pro bono*, asserted that he discovered additional facts and obtained new affidavits establishing his actual innocence. In support of the petition, Chambers, Hamelin and Johnson each attested that they told police and an assistant State's Attorney that defendant was "the wrong man" after being shown defendant's picture. Defendant asserted that his efforts to contact those men to obtain their affidavits were hampered by the difficulty of communicating within the prison system and that his purported accomplices "didn't know me and they had no reason to help me." Additionally, defendant stated that "McGee" was not correctly identified as Taylor until 2007.

Defendant stated he recently discovered that the police and prosecutors did not disclose to his trial attorney, Stephen Richards, the description of the fifth perpetrator that the other defendants had given. Defendant asserted that when Chambers, Hamelin and Johnson were arrested, they had described the fifth offender ("Carl") to police as being 6 feet tall with long hair and a slim build. Defendant stated that, in contrast, he is 5 feet 9 inches tall and that he had a stocky frame and short hair at the time of his arrest.

In addition to the affidavits of Chambers, Hamelin and Johnson, defendant's third petition was accompanied by his own affidavit and affidavits from Taylor, Richards and a former girlfriend of defendant. Defendant attested that an officer threatened and physically abused him until he signed an inculpatory statement. Defendant also asserted the statements of his alleged accomplices that he was not involved in the crimes, as well as the physical description of the fifth offender, were concealed from him and his trial counsel in violation of *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963).

The new affidavits of Chambers and Hamelin were prepared in 2007. Chambers reiterated his statements from his 2003 affidavit that he had described the fifth participant to police and said he did not know that individual. Chambers attested that when police showed him a photograph of a man who had been arrested as the fifth participant, he told police that was not the right person. Chambers stated that the officer told him that person in the photo was a friend of Brown named Carl. Chambers further stated that during his interrogation, a police detective told him not to include in his statement a description of the fifth participant in the crimes, presumably because that person's features would not match defendant's. Similarly, Hamelin renewed his previous attestations that he was ordered to falsely implicate defendant.

Johnson also attested that he told police that defendant was not the fifth participant. Johnson stated that late on the night of January 12, 1994, Brown picked him up in a Chevrolet Caprice and that Hamelin and Chambers were in the backseat along with a fifth man. Although they were all seated, Johnson estimated that the fifth person was taller than him, meaning more than 5 feet 9 inches in height.

Johnson attested that he identified Hamelin, Chambers and Brown to police but that he told detectives that a photo he was shown was not the man in the backseat. Johnson said the detective responded that "it didn't matter" if he could identify the backseat passenger because Chambers and Hamelin already had. Johnson further attested that when police stopped him and Brown in the Caprice, the other people in the car were Johnson's brother and cousin, which was contrary to evidence at defendant's trial that Taylor ("McGee") also was in the car. Johnson acknowledged he had received previous requests for help from defendant but had not responded.

Richards, who was defendant's trial counsel, attested that in 2007, he learned from defendant's postconviction counsel that Chambers, Hamelin and Johnson had told police that defendant was not involved in the crimes and had given a description of the fifth participant that was inconsistent with defendant's features. Richards attested that had

he known those facts, he would have interviewed the alleged accomplices, obtained their version of events and called them as witnesses, in addition to cross-examining additional witnesses regarding that evidence.

Taylor attested that late in the evening of January 13, 1994, he saw Brown in the Caprice with Johnson (whom Taylor knew as "Bay") and a third person Taylor believed to be Johnson's nephew. Taylor got into Brown's vehicle, and police stopped the car several minutes later. Taylor attested that when police threatened to implicate him in the murders and asked him to locate "Carl," he led them to defendant, who was the only "Carl" he knew, at the home of Wells, defendant's girlfriend. Taylor said he told police that he did not know if defendant was involved in the crimes.

In a 10-page written opinion, the circuit court set out the facts as stated in defendant's inculpatory statement to police. The court addressed each affidavit attached to the petition and concluded that those attestations did not offer newly discovered evidence that would have changed the result of defendant's trial. The court denied defendant leave to file his third postconviction petition because the petition did not meet the cause and prejudice tests, and furthermore, the petition was "frivolous and patently without merit." Defendant now appeals that ruling.

## ANALYSIS

On appeal, defendant contends that his third petition and the accompanying affidavits meet the cause and prejudice requirements and, furthermore, establish his actual innocence and a violation of his constitutional rights. Defendant asserts that his postconviction claims should advance beyond the initial stage of review.

The Act allows a convicted defendant to assert a substantial denial of his or her federal or state constitutional rights. 725 ILCS 5/122—1 *et seq.* (West 2004); see also *People v. Delton*, 227 Ill. 2d 247, 253, 882 N.E.2d 516, 519 (2008). Thus, in a postconviction proceeding, the circuit court does not redetermine a petitioner's guilt or innocence but instead examines constitutional issues that escaped earlier review. *People v. Ross*, 229 Ill. 2d 255, 260, 891 N.E.2d 865, 869 (2008).

Where, as here, a case does not involve the death penalty, the consideration of a defendant's postconviction petition is a three-stage process. At the first stage, the circuit court must independently review the postconviction petition within 90 days of its filing and determine whether the petition is frivolous or patently without merit, meaning that the allegations in the petition failed to present the "gist" of a constitutional claim. 725 ILCS 5/122—2.1(a)(2) (West 2006); see also

*People v. Edwards*, 197 Ill. 2d 239, 245, 757 N.E.2d 442, 446 (2001). The "gist" standard is a low threshold, described as more than a bare allegation of a deprivation of a constitutional right but less than a completely pleaded or fully stated claim. *Edwards*, 197 Ill. 2d at 245, 757 N.E.2d at 446.

If the court does not dismiss the petition at the first stage, counsel is appointed to represent the defendant, and the State is allowed to file responsive pleadings. 725 ILCS 5/122—4, 122—5 (West 2006). At this second stage of postconviction review, the circuit court must determine whether the petition and any accompanying documents make a substantial showing of a constitutional violation. 725 ILCS 5/122—1(a)(1) (West 2006). The petition is dismissed at that stage if such a showing is not made. However, a petition that presents a substantial showing of a constitutional violation proceeds to the third stage of postconviction review, at which the circuit court conducts an evidentiary hearing on the defendant's claims. 725 ILCS 5/122—6 (West 2006).

At issue here is whether defendant's postconviction claims should advance beyond the first stage of review. This appeal is taken from defendant's third postconviction petition, and the Act contemplates the filing of only one postconviction petition. 725 ILCS 5/122—1(f) (West 2006). A successive petition is not automatically reviewed on its merits. *People v. Wyles*, 383 Ill. App. 3d 271, 274, 891 N.E.2d 437, 439 (2008). In addition, any claim of a substantial denial of constitutional rights not raised in the original or amended petition is waived, and claims that were previously decided on direct appeal are barred by *res judicata*. 725 ILCS 5/122—3 (West 2006); *People v. Tenner*, 206 Ill. 2d 381, 392, 794 N.E.2d 238, 245 (2002).

■ However, the waiver provision of section 122—3 of the Act can be lifted, and a successive petition can be considered on its merits, if it meets the cause and prejudice tests in section 122—1(f) of the Act. 725 ILCS 5/122—1(f) (West 2006); see also *People v. Pitsonbarger*, 205 Ill. 2d 444, 463, 793 N.E.2d 609, 623 (2002). "Cause" has been defined as some objective factor, external to the defense, that impeded counsel's ability to raise the claim in an earlier proceeding. *Pitsonbarger*, 205 Ill. 2d at 460, 793 N.E.2d at 621. "Prejudice" is shown when the defendant can demonstrate that the claimed constitutional error "so infected his trial that the resulting conviction violated due process." *People v. Morgan*, 212 Ill. 2d 148, 154, 817 N.E.2d 524, 527 (2004).

If a defendant cannot meet the cause and prejudice requirements, a court still may allow a successive petition if it presents a claim of actual innocence, such that the defendant would be exonerated or completely vindicated of the crime, and if consideration of the claims

in the successive petition is necessary to "prevent a fundamental miscarriage of justice." *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621. A defendant is allowed to assert a claim of actual innocence in a successive petition because a wrongful conviction of an innocent person violates due process. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527; *People v. Washington*, 171 Ill. 2d 475, 489, 665 N.E.2d 1330, 1336-37 (1996).

Whether a case involves an initial postconviction filing or, as here, a successive postconviction petition, this court reviews the circuit court's ruling *de novo*. See *People v. LaPointe*, 365 Ill. App. 3d 914, 923, 850 N.E.2d 893, 900 (2006). As with an initial postconviction filing, in considering this successive petition, all well-pleaded facts in the petition and supporting affidavits are taken as true. See *Pitsonbarger*, 205 Ill. 2d at 467, 793 N.E.2d at 625.

Defendant's third petition makes a claim of actual innocence. To establish actual innocence, a defendant must present newly discovered evidence, *i.e.*, evidence that was not available at trial and that could not have been discovered sooner through due diligence. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. In addition to being newly discovered, the evidence must be material, noncumulative and of such conclusive character that it would probably change the result on retrial. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527.

Defendant contends that the newly presented affidavits of Zarice Johnson and Taylor, as well as the 2007 affidavits of Chambers and Hamelin, accompanying his third petition constitute exculpatory evidence that could not have been presented earlier. Defendant points out that Johnson's description of the fifth participant did not match defendant's clean-shaven appearance and stocky frame and further emphasizes Johnson's attestation that he told police that defendant was not the fifth man. Taylor also attested that he did not know if defendant was involved in the crimes and that he led police to defendant because he was the only "Carl" that Taylor knew.

Defendant argues that the strength of those affidavits outweighs his confession to the crimes, which he claims was coerced. Defendant further asserts that the record is devoid of any evidence that one of his alleged accomplices or a witness to the offense described the fifth man to police as having features that resembled his own.[3]

---

[3]At the hearing on defendant's motion to quash his arrest and suppress evidence, Chicago police officer Stanley Turner testified that Taylor described the "Carl" that he knew as a male black about 5 feet 8 inches tall and weighing 155 to 160 pounds with short hair, though defendant would assert that

The State responds that *res judicata* and collateral estoppel bar the claims in defendant's third petition. The State asserts that when this court ruled on the appeal from defendant's second postconviction petition, it addressed the issue of his claim of actual innocence.

Of the doctrines of *res judicata* (claim preclusion) and collateral estoppel (issue preclusion), the latter theory is more pertinent here. Collateral estoppel bars the relitigation of a particular issue that was already decided in a prior case. *Tenner*, 206 Ill. 2d at 396, 794 N.E.2d at 247. Collateral estoppel applies when: (1) the court rendered a final judgment in the prior case; (2) the parties are the same or in privity; and (3) the issue decided in the prior case is identical to the issue presented in the instant case. *Tenner*, 206 Ill. 2d at 396, 794 N.E.2d at 247. In contrast, a ruling on an initial postconviction petition has a *res judicata* effect with respect to claims that were raised or could have been raised in the petition. *People v. Flores*, 153 Ill. 2d 264, 274, 606 N.E.2d 1078, 1083 (1992).

The Illinois Supreme Court has applied collateral estoppel to bar the consideration of an issue in a successive postconviction proceeding if the identical issue was decided in a prior postconviction proceeding. *Tenner*, 206 Ill. 2d at 396, 794 N.E.2d at 247-48 (using collateral estoppel because initial and subsequent postconviction proceedings are different causes of action). Focusing on the third prong of collateral estoppel, we consider whether the inquiry presented in our review of defendant's third postconviction petition is the same issue that was decided in the proceedings on defendant's previous petition. If so, collateral estoppel prohibits our consideration of that issue.

At issue in this court's consideration of defendant's second postconviction petition was whether the 2004 affidavits of Chambers and Hamelin constituted newly discovered evidence of defendant's actual innocence. The State acknowledges that the affidavits that defendant has presented with his third petition "fill[ ] in the gaps" of his second petition; however, the State asserts that the third petition does not "raise a new claim." It is true that a defendant cannot engage in "piecemeal post-conviction litigation" by supplementing previously rejected claims with refashioned documentation and effectively rephrasing the same argument in a successive petition. However, the doctrine of collateral estoppel is not applicable where a defendant has offered additional evidence. See *Tenner*, 206 Ill. 2d at 397-98, 794 N.E.2d at 248; see also *People v. Enis*, 163 Ill. 2d 367, 386, 645 N.E.2d 856, 864-65 (1994); *People v. Armstrong*, 56 Ill. 2d 159, 306 N.E.2d 14 (1973).

---

Taylor was not describing the fifth offender but rather his description as the "Carl" who was known to and identified by Taylor.

To support a claim of actual innocence, a defendant must present newly discovered evidence, meaning evidence that was not available at trial and could not have been discovered sooner through due diligence. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. In support of his third postconviction petition, defendant presented the attestations of Zarice Johnson and Taylor, both of whom were involved in the crimes and were not heard from before. We disagree with the State that the new affidavits attesting to defendant's innocence in this case are comparable to the "refashioned" psychiatric reports rejected in *Tenner*.

As to why the affidavits of Johnson and Taylor could not have been offered earlier, defendant emphasizes that Johnson did not agree to provide an affidavit until 2006 and that Taylor was not correctly identified until 2007 when defendant's newly obtained *pro bono* counsel began investigating his claims. Defendant argues that because he lacked legal representation in his first two postconviction proceedings, principles of substantial fairness should permit him to present the new affidavits of Chambers and Hamelin, as well as the never-before-considered attestations of Johnson, Taylor and his trial counsel, Richards.

▮ In addition to being newly discovered, the evidence supporting a successive postconviction petition also must be material, noncumulative and of such conclusive character that it would probably change the result on retrial. *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. Here, the attestations of Johnson and Taylor that defendant was not the fifth participant in the crimes and that they identified defendant as the fifth offender under pressure from police are clearly material and have the potential to change the result on retrial.

Moreover, Johnson's and Taylor's attestations are not cumulative to the evidence that was presented previously. Evidence is considered cumulative if it does not add anything to what was presented to the jury, and evidence is noncumulative if it creates new questions in the mind of the trier of fact. *People v. Ortiz*, 385 Ill. App. 3d 1, 11, 896 N.E.2d 791, 723 (2008). Johnson, who entered a guilty plea in the offenses at issue, attested that the man in Brown's vehicle that night, whom he did not know, was dark-skinned and slim with a full beard and that police detectives showed him a photo of a different man and ignored his protestations of an incorrect identification. Taylor offered a similar attestation that he was held at the police station and threatened that if he did not lead the police to "Carl," he would be implicated in the crimes. Taylor stated that he led the officers to defendant, who was the only "Carl" he knew. That these attestations are consistent with those of Chambers and Hamelin does not render them cumulative; rather, Johnson's and Taylor's statements lend

credence to Chambers' and Hamelin's similar affidavits stating that they were pressured to wrongly identify defendant. The fact that Johnson and Taylor provide attestations exonerating defendant is sufficient to create a new question of defendant's innocence in the eyes of the trier of fact.

The State contends that the facts here are analogous to those in *People v. Harris*, 206 Ill. 2d 293, 794 N.E.2d 181 (2002), in which the defendant offered affidavits from four people in support of his postconviction claim of actual innocence. The defendant's two brothers attested that he was with them at the time of the offense, and his codefendants attested that he was not involved and that they had conspired to frame him. *Harris*, 206 Ill. 2d at 300-01, 794 N.E.2d at 187-88. Holding that the defendant's claims of actual innocence did not warrant an evidentiary hearing, the supreme court stated that the brothers' alibi testimony could have been offered earlier and that the codefendants' affidavits did not overcome the evidence of the defendant's guilt. *Harris*, 206 Ill. 2d at 301-02, 794 N.E.2d at 188. The court also noted the similarity of the details included in the inculpatory statements of the defendant and codefendants, along with the statements' consistency with the testimony of an eyewitness. *Harris*, 206 Ill. 2d at 301-02, 794 N.E.2d at 188. The supreme court concluded that the affidavits of the codefendants and the defendant's brothers were not newly discovered and would not have changed the result on retrial. *Harris*, 206 Ill. 2d at 302, 794 N.E.2d at 188. The State merely describes the facts of *Harris* and offers no argument as to how *Harris* is comparable to this case. Nevertheless, in *Harris*, an eyewitness identified the defendant as the gunman, and the defendant did not previously challenge his confession.

The State further asserts that even if we determine that defendant's claim of actual innocence is not barred by collateral estoppel or *res judicata*, defendant's petition does not meet the cause and prejudice test. Defendant's third postconviction petition presented a valid freestanding claim of actual innocence, which is an alternative means by which a defendant can gain review of a successive petition, not an additional inquiry to the cause and prejudice test. See *Pitsonbarger*, 205 Ill. 2d at 459, 793 N.E.2d at 621 (if petitioner cannot show cause and prejudice, his failure to raise claim in an earlier petition will be excused upon showing of actual innocence). Defendant's petition states a claim of actual innocence that is not barred by collateral estoppel. Therefore, we do not follow the State's suggestion that we still must consider the cause and prejudice test.

We take issue with the State on a final point. The State acknowledges that the affidavits accompanying defendant's third postconvic-

tion petition must be taken as true (see *People v. Coleman*, 183 Ill. 2d 366, 381, 701 N.E.2d 1063, 1071-72 (1998)), but argues that no published cases have addressed "how pleadings and affidavits on petitions for leave to file a successive post-conviction petition should be viewed." We have found no authority explaining why affidavits that are offered in support of a successive petition should be given any less weight than those that accompany an initial postconviction filing. Even considered as true, affidavits submitted with a successive petition that claims actual innocence still must meet the requirements of being newly discovered, material, noncumulative and of such conclusive character as to likely change the result on retrial. See *Morgan*, 212 Ill. 2d at 154, 817 N.E.2d at 527. The affidavits offered in support of defendant's third postconviction petition meet those tests.

In summary, given the *pro se* status of defendant in his initial two postconviction petitions, the gravity of the offenses in this case and the affidavits attesting to defendant's actual innocence, fundamental fairness requires that defendant's postconviction claims receive full consideration on their merits. This case is therefore remanded for further proceedings on all of the claims in defendant's third postconviction petition.

## CONCLUSION

For all of the reasons stated above, defendant has set forth a viable claim of actual innocence such that his third postconviction petition should be considered on its merits. Accordingly, the circuit court's dismissal of defendant's petition is reversed, and this case is remanded for second-stage proceedings on the entire petition under sections 122—4 through 122—6 of the Act.

Reversed and remanded.

NEVILLE and STEELE, JJ., concur.