NOTICE
Decision filed 05/01/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230448-U

NO. 5-23-0448

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | St. Clair County. |
| | ) | |
| v. | ) | No. 06-CF-731 |
| | ) | |
| LAQUIZE McMATH, | ) | Honorable |
| | ) | Julie K. Katz, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE McHANEY delivered the judgment of the court.
Justices Cates and Boie concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court properly denied leave to file a successive postconviction petition where defendant's claims were based on a video he had never seen. The record did not establish that the State withheld the video or that it was likely exculpatory. As any argument to the contrary would lack merit, we grant defendant's appointed counsel on appeal leave to withdraw and affirm the circuit court's judgment.

¶ 2    Defendant, Laquize McMath, appeals the circuit court's order denying him leave to file a successive postconviction petition. His appointed appellate counsel, the Office of the State Appellate Defender (OSAD), has concluded that there is no reasonably meritorious argument that the court erred in doing so. Accordingly, it has filed a motion to withdraw as counsel along with a supporting memorandum. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). OSAD has notified defendant of its motion, and this court has provided him with ample opportunity to respond, but he has not done so. After considering the record on appeal and OSAD's motion supporting brief,

1

we agree that this appeal presents no reasonably meritorious issues. Thus, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 3                                    BACKGROUND

¶ 4      Defendant was charged with first degree murder and other offenses in the shooting death of Lawrence Townsend outside the Private Mathison Manor apartments. At trial, three eyewitnesses, Terrance Wells, Travis Wells, and Gary Bailey, placed defendant at the scene, holding a gun, and threatening Townsend. Travis Wells testified that he was inside when he heard gunshots. When he went to the porch to investigate, he saw defendant backing up, holding a gun that he was putting under his shirt. Defendant then ran away through a hole in the fence. He found Townsend on the ground, bleeding. Terrance Wells and Bailey also testified that defendant was present with a gun and targeted Townsend. Centreville detective Kiwan Guyton and Illinois State Police special agent Dave Fort described their investigation of the crime scene. Defendant testified that he was with his brother in St. Louis at the time of the shooting. The jury found defendant guilty.

¶ 5      In a *pro se* posttrial motion, defendant asserted that defense counsel was ineffective for failing to subpoena his brother, Shaun Kyles, to corroborate his alibi, and three additional witnesses who allegedly would have testified that defendant was not the shooter. After questioning defense counsel, the trial court denied the motion.

¶ 6      On direct appeal, defendant again argued that defense counsel was ineffective for not calling the witnesses defendant had identified. We rejected defendant's claim, noting that it was "grounded upon conclusory and speculative allegations." *People v. McMath*, No. 5-07-0496 (2008), order at 3 (unpublished order under Illinois Supreme Court Rule 23). We emphasized that trial counsel stated that he made a strategic decision not to call Kyles and could not locate the other

2

three witnesses. We further noted that "there is nothing in the record by way of affidavits or posttrial motion testimony for this court to determine whether the proposed witnesses could have provided any information or testimony favorable to the defendant." *Id.* In the succeeding years, defendant instituted a number of collateral proceedings, which included an initial postconviction petition, which the circuit court summarily denied, two motions seeking leave to file successive postconviction petitions, and several motions for forensic testing.

¶ 7    On March 1, 2022, defendant again sought leave to file a successive postconviction petition. He raised an actual-innocence claim based on newly discovered evidence, as well as a *Brady* (see *Brady v. Maryland*, 373 U.S. 83, 87 (1963)) violation for the State's failure to disclose surveillance video from the crime scene. Defendant alleged that he had discovered, through a Freedom of Information Act (FOIA) request, that a DVD recording from a surveillance camera near the scene of the shooting had been delivered to the Centreville Police Department on May 9, 2006. He stated that the housing authority retained a "computer disc purportedly containing recordings related to the homicide" but was unable to view it because it was in "DBX format." According to Fort's report of his investigation, the video "revealed several people leaving the area after the incident," and "a vehicle[, Terrance Wells's 1999 White Cadillac Escalade bearing Illinois registration 9948107,] leaving the area after the shooting."

¶ 8    Defendant further claimed that the disc had not been disclosed to defense counsel and contended that it was exculpatory because it reportedly showed people fleeing the scene. According to defendant, it would either show him fleeing the scene, which would allegedly show that he was not the shooter, or it would show that he was not present, thus corroborating his trial testimony to that effect. He acknowledged that he had not actually seen the video.

¶ 9     The trial court denied defendant's request for leave to file, citing his failure to show cause and prejudice. As to cause, the court found that defendant's representation that he was not aware of the video when he filed his first postconviction petition was "not credible," and that it was "unfathomable that his attorney would not have obtained a copy of the police report" prior to trial. As to prejudice, the court found that defendant could not establish that the evidence was favorable to him, because "he does not have possession of the video footage, nor has he ever reviewed it." Defendant timely appealed.

¶ 10                              ANALYSIS

¶ 11    OSAD concludes that there is no reasonably meritorious argument that the circuit court erred by denying defendant leave to file a successive postconviction petition. The Post-Conviction Hearing Act (Act) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a) (West 2020); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). Proceedings under the Act are collateral. *People v. Edwards*, 2012 IL 111711, ¶ 21. As a result, issues that were decided on direct appeal or in previous collateral proceedings are barred by *res judicata* (*People v. Pitsonbarger*, 205 Ill. 2d 444, 458 (2002)), and issues that could have been raised earlier, but were not, are forfeited (*People v. Blair*, 215 Ill. 2d 427, 443-44 (2005)).

¶ 12    The Act contemplates the filing of only one postconviction petition and provides in section 122-3 (725 ILCS 5/122-3 (West 2020)) that "[a]ny claim of substantial denial of constitutional rights not raised in the original or an amended petition is waived." *People v. Bailey*, 2017 IL 121450, ¶ 15. To file a successive petition, a defendant must obtain leave of court, which may be granted where the defendant demonstrates cause for his or her failure to bring the claim in his or her initial postconviction proceedings and prejudice resulting from that failure. 725 ILCS 5/122-

4

1(f) (West 2020). "Cause" in this context refers to any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim in the initial postconviction proceeding. *Pitsonbarger*, 205 Ill. 2d at 462. "Prejudice" is shown when the defendant presents a claim of constitutional error that so infected the trial that the resulting conviction or sentence violates due process. *People v. Williams*, 392 Ill. App. 3d 359, 366 (2009). A defendant may also raise a claim of actual innocence, which is exempt from the cause-and-prejudice requirement. *People v. Ortiz*, 235 Ill. 2d 319, 330 (2009).

¶ 13    In his petition, defendant claimed that the DVD was material evidence that supported an actual-innocence claim. He further alleged that the State committed a *Brady* violation by failing to turn over the allegedly exculpatory video. OSAD concludes that defendant's inability to attach the video to his petition or to accurately summarize its contents is fatal to both claims. We agree.

¶ 14    We note the potential unfairness in finding that defendant is responsible for failing to view a video that the State wrongfully withheld. However, as we explain, the record refutes defendant's assertions that the State withheld the video or that it was likely exculpatory. As a result, defendant cannot advance a successful actual-innocence claim nor can he establish the cause and prejudice necessary to file a successive postconviction petition in the absence of an actual-innocence claim.

¶ 15    The elements of a claim of actual innocence are that the evidence in support of the claim must be "newly discovered," material and not merely cumulative, and of such conclusive character that it would probably change the result on retrial. *Edwards*, 2012 IL 111711, ¶ 32. "Newly discovered" evidence is that which "has been discovered since the trial and that the defendant could not have discovered sooner through due diligence." *Ortiz*, 235 Ill. 2d at 334.

¶ 16    Defendant cannot establish any of these elements here. Fort's report refers to the video. The State's initial response to defendant's discovery request indicated that all relevant police

5

reports were being tendered and that all physical evidence was available for inspection. In denying leave to file the latest petition, the circuit court found it "inconceivable" that defense counsel would not have reviewed the police reports before trial, which would have revealed the existence of the video.

¶ 17    Moreover, there is no reasonable likelihood that the video would have been material and conclusive evidence of defendant's innocence. Defendant relies on Fort's description of the video as showing "several people leaving the area after the incident," and showing a car with a specific license plate driving away. From this, defendant speculates that either the video would show him as one of the people running away—thus supposedly excluding him as the shooter—or it would not, which would have corroborated his trial testimony that he was not there.

¶ 18    There are obviously other possibilities for which defendant's theory does not account. But even assuming the correctness of his theory, it does not establish that the evidence would have been material and conclusive. Had the video shown defendant running away from the scene, it would have contradicted his trial testimony that he was in St. Louis at the time. Moreover, it might well have corroborated Travis Wells's testimony that he saw defendant running from the scene after the shooting.

¶ 19    The failure of the video to show defendant would likewise not have been material. Fort's description of the video was quite vague. It does not say how many people were running away or whether anyone was specifically identifiable. It does not indicate where the camera was in relation to the shooting. Obviously, a fixed security camera would show only a small portion of the scene. There could have been other people present behind the camera or on either side. Thus, the video could not conclusively prove that defendant was not present. At most it would have been cumulative of defendant's alibi testimony. Thus, the video was not newly discovered evidence

6

material to the issue of his guilt, so his actual-innocence claim fails. Even if defendant could produce the video, this result would not likely change.

¶ 20    The above analysis largely disposes of defendant's *Brady* claim as well because he cannot establish cause for or prejudice from failing to raise the claim in his initial postconviction petition. While a valid *Brady* claim could establish cause for failing to raise the issue, the record here, as noted, gives no indication that the State withheld the report: it was referenced in a police report which the State presumably turned over in discovery. Defendant was apparently able to get Fort's report and confirm the video's existence through FOIA requests, which shows that the State was not actively attempting to hide it. Moreover, the court found incredible his claim that the defense had not had it earlier.

¶ 21    Moreover, defendant cannot establish prejudice as the claim would fail in any event. To establish a *Brady* violation, a defendant must show that (1) the undisclosed evidence is favorable to the accused because it is either exculpatory or impeaching, (2) the evidence was suppressed by the State either willfully or inadvertently, and (3) the accused was prejudiced because the evidence is material to guilt or punishment. *People v. Beaman*, 229 Ill. 2d 56, 73-74 (2008).

¶ 22    As discussed above, there is no reasonable likelihood that the video would have been material to defendant's guilt or innocence. At worst, it would have undermined his own alibi testimony and corroborated the testimony of a State witness. At best, it might have offered some partial corroboration of his testimony but would not have conclusively proved that he was not at the scene.

¶ 23                                    CONCLUSION

¶ 24    As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

7

¶ 25    Motion granted; judgment affirmed.